AUGUSTUS GEIGER, Respondent, *v.* DWIGHT DIVINE, Appellant.

Third Department, July 6, 1922.

Waters and watercourses — easements — action to restrain maintenance of dam so constructed as to overflow lands of upper proprietor — claim to easement by adverse user — finding that dam of defendant's predecessors did not cause waters to overflow plaintiff's land sustained by evidence.

In an action by an upper proprietor to restrain the maintenance of a dam so constructed as to overflow the lands of the plaintiff, in which the defense was interposed that the defendant held an easement based on adverse user by himself and his predecessors in title, *held*, that the finding by the court that the dam maintained by the defendant's predecessors did not cause the waters of the stream to overflow the land of the plaintiff is sustained by the evidence.

APPEAL by the defendant, Dwight Divine, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Ulster on the 2d day of September, 1921, upon the decision of the court rendered after a trial at the Ulster Trial Term, certain questions of fact having been submitted to the jury, and also from an order entered in said clerk's office on the same day denying defendant's motion for a new trial made upon the minutes.

*A. T. Clearwater,* for the appellant.

*Amos Van Etten,* for the respondent.

COCHRANE, P. J.:

The facts in this case are stated on a former appeal reported in 193 Appellate Division, 545, and we, therefore, refrain from restating them. At the trial we are now reviewing the defendant admitted that his dam causes water to overflow the plaintiff's land. In fact the defendant requested the following finding: " That the dam thus crossing the Good Beer Kill as constructed and maintained by the defendant caused the water of that stream to back up over the lands of the plaintiff," and the court so found. The right of the defendant to such an easement rests solely on a prescriptive title. No other claim is now made. The court submitted to the jury this question: " Did the dam at Cape Pond as maintained by the Delaware and Hudson Canal Company or Tuthill cause the water to flood the flat land now owned by Geiger substantially to the same extent as now? " The jury answered this question in the negative. The court approved such verdict and made an additional finding as follows: " The dam as maintained by Tuthill and the Delaware and Hudson Canal Company

impounded the waters of the Good Beer Kill stream so that it was flooded back to a point at or near the site of the Montrose bridge, which is some distance down the stream from plaintiff's premises." On the former trial it was found by the court that the dam as maintained by Tuthill and the canal company caused the impounded waters to overflow the lands now owned by the plaintiff. In this respect the present appeal presents a different aspect than the former. The question now before us is whether the finding of the trial justice above recited is sustained by the evidence.

The Montrose bridge was located below the plaintiff's premises. It took its name from its owner who owned the farm situated on both sides of the stream and who used the bridge for his farming purposes. Witnesses for the plaintiff who assisted in the construction of this bridge, Montrose, the owner thereof, and others who lived near the bridge and were familiar with the conditions testified in substance that the still water of the pond caused by the old dam terminated below or at the bridge. Various instances in connection therewith were given by the witnesses, one of which was that it was customary to float logs down the stream to the Tuthill sawmill and that such logs were carried by the current of the stream under the bridge until they reached the still waters of the pond below. Montrose testified that although at times of high water it would cover the approaches to the bridge he never knew it to reach the top thereof but that now the water covers the stone abutments on which the crude framework of the bridge formerly rested.

The defendant called more witnesses than the plaintiff, but for the most part they did not attempt to compare the extent of the water impounded by the old and new dams respectively with reference to the Montrose bridge. Their testimony was largely directed to showing that during the existence of the old dam the lands now owned by plaintiff were to a greater or less extent covered with water. There is no serious question about that. The land in that vicinity was formerly known as " drowned lands." It is low and marshy. Plaintiff's witnesses admit that in times of high water or severe storms the land was to a greater or less extent in some portions at least covered with surface water which drained off after a short time. The real inquiry was as to whether the old dam caused any more water to be deposited on the land in question than would otherwise have existed. The testimony of some of the defendant's witnesses, however, is directly at variance with that of the plaintiff's witnesses and thus a substantial question of fact arose. Defendant also presented considerable evidence in an effort to show that the present dam is no higher than the former. He admits, however, that the old dam was not water tight. The

present dam is of modern formation and concrete construction. The question is not as to the height of the two dams respectively but as to the height of the water which they respectively impounded.

On the former appeal we held that the burden of proof was on the defendant; that the question of defendant's prescriptive right to the easement had either not been decided or if it had been the decision had been reached under the mistaken idea that the burden of proof was on the plaintiff. We stated that the evidence as to the extent of the flooding of plaintiff's land by the defendant as compared with its flooding during the existence of the old dam presented a close and serious question of fact which might well turn on the question of the burden of proof. A re-examination of the case in the light of the evidence now before us confirms us in that view. The court with the assistance of the jury has found that the dam maintained by the defendant's predecessors did not cause the water of the stream to overflow the land now owned by plaintiff. This finding is not against the weight of evidence and as the defendant admits that his dam causes damage to the plaintiff we discover no reason for interference with the judgment.

The judgment and order should be affirmed, with costs.

Judgment and order unanimously affirmed, with costs.